**Gregory Dean CLARK, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F-82-434.**

Court of Criminal Appeals of Oklahoma.

June 2, 1983.

Robert M. Beck, Sp. Counsel, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Hugh A. Manning, Asst. Atty. Gen., for appellee.

### MEMORANDUM OPINION

BUSSEY, Presiding Judge:

The appellant, Gregory Dean Clark, was convicted in Greer County District Court, Case No. CRF-81-14, of Assault and Battery with a Dangerous Weapon, After Former Conviction of a Felony, was sentenced to twenty-five (25) years' imprisonment, and he appeals.

In his first assignment of error, the appellant argues that the trial court erred by failing to sustain his motion for a directed verdict due to insufficiency of the evidence. Briefly stated, the pertinent facts of this case are that Bobby Ray Curtis, an inmate of the Oklahoma State Reformatory at Granite, testified that on April 30, 1981, just before noon, he was stabbed by two other inmates, one of whom he positively identified at trial as the appellant, Clark. Curtis related that Clark was of the belief that he had "snitched" on him, by informing the authorities that Clark had made

some 18 gallons of home brewed beer, and, in order to "take care" of the matter, Clark "shanked" him, with the assistance of two other inmates, Lee Stanton and Larry Patterson. Further, Curtis stated that he saw Clark and Stanton running in a southerly direction after they had "shanked" him.

James K. Poff, a prison guard who was stationed in Tower Number 4 at the time the incident occurred, testified that he was alerted to a disturbance on the prison yard and observed the wounded Curtis. Further, he saw two inmates "duck around" the prison's laundry which is located south of the place where the victim was stabbed. Poff blew his whistle and fired his rifle twice into the air to alert other guards to the trouble in the prison yard.

Another guard, Doyle Stoup, stated that as he responded to the sounding of the alarm by Tower 4, he saw two inmates come around the corner of the laundry, and at trial he identified the appellant as one of them. Furthermore, he observed Clark enter the prison's mess hall.

Additionally, two knives that had been sharpened on both sides were found along the route that Clark and Stanton were observed to have taken. A State's chemist identified stains found on the knives as human blood.

Also, inmate Robert Kelsey testified that the appellant had approached him between 7:00 and 7:30 A.M. on April 30, 1981, and had asked if he could help him get a couple of knives. Kelsey stated that State's Exhibit No. 2 looked like the knife he helped the appellant acquire. Furthermore, Kelsey testified regarding the particulars of the "shanking" of Curtis, which he stated were the subject of numerous conversations he had between Clark and Stanton, while all three were confined in the prisons "lockup" area following the incident.

On cross-examination of Curtis, the defense pointed out several inconsistencies between his testimony at previous hearings and his testimony at trial. Furthermore, the defense called two witnesses who testified that Kelsey had a reputation as a liar, and that he had informed them that they could all get transferred to another penal institution if they would help him lie about Clark's stabbing of Curtis.

When the sufficiency of the evidence presented at trial is challenged on appeal, as it is here, the proper test is whether a prima facie case has been established. If that test is satisfied, then all questions of fact are for the jury to resolve. In reviewing the evidence to determine whether the State has established a prima facie case, we view the evidence in the light most favorable to the State. *Nutter v. State,* 658 P.2d 492 (Okl.Cr.1983); *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Furthermore, it is well established that a criminal case may be proved circumstantially and reasonable inferences drawn therefrom have the same probative effect as direct testimony. *Collins v. State,* 561 P.2d 1373 (Okl.Cr.1977).

The record before us discloses that the State presented sufficient evidence to support the verdict of the jury. We have consistently held that where there is evidence from which the jury could reasonably conclude that the defendant was guilty as charged, we will not interfere with the verdict even though there may be sharp conflicts in the evidence. See for instance, *Winrow v. State,* 645 P.2d 1019 (Okl.Cr. 1982), and cases cited therein. This assignment of error is without merit.

In his second assignment of error, the appellant complains of alleged fundamental errors in the instructing of the jury. We have reviewed the instructions for fundamental error, and find that, contrary to the appellant's assertion, when the instructions are taken as a whole the elements of Assault and Battery with a Dangerous Weapon were properly instructed upon; however, his allegation that the maximum punishment for Assault and Battery with a Dangerous Weapon, After Former Conviction of a Felony, was improperly instructed upon is valid, and the State admits the error in its brief. The appellant stipulated at trial that he had been previously convicted of Robbery with Firearms, After Former

Conviction of Two Felonies, in Oklahoma County District Court, Case No. CRF–80–1995, and he waived a bifurcated trial. The trial court should have instructed the jury in accordance with Laws 1978, ch. 281, § 1, 21 O.S.Supp.1978, § 51(A)(2); but did not. In light of the State's confession of error, we find that the sentence should be modified from a term of twenty-five (25) years' imprisonment to a term of ten (10) years' imprisonment, and as so MODIFIED the judgment and sentence is AFFIRMED.

CORNISH and BRETT, JJ., concur.